# United States District Court
# Central District of California

| | |
|---|---|
| GUOTAI USA, COMPANY, LTD.; JIANGSU GUOTAI LITIAN ENTERPRISES COMPANY, LTD;     Third Party Plaintiffs,     v. J&COMPANY, LLC; JACOB ABIKZER; MILO HAIM; and DOES 50–100,     Third Party Defendants. | Case № 2:16-cv-06948-ODW (PLA) **ORDER DENYING MOTION FOR DEFAULT JUDGMENT [85]** |

## I. INTRODUCTION

This case involves a trademark licensing agreement. Before the Court is Third Party Plaintiffs Guotai USA Company Ltd. and Jiangsu Guotai Litian Enterprises Company's motion for default judgment against Third Party Defendants J&Company Jeans, LLC and Jacob Abikzar. (ECF No. 85.) For the following reasons, the Court **DENIES** the motion.[1]

---

[1] After considering the moving papers, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiffs in the underlying lawsuit, JNCO Holdings, LLC ("JNCO Holdings") and JNCO, LLC ("JNCO"), are owners of the JNCO mark. (Third Party Compl. ("TPC"), Ex. 4 at 1, ECF No. 40.) This mark is best known for its association with a particular line of baggy jeans. (*Id.* ¶ 19.) Defendants in the underlying lawsuit (and Third Party Plaintiffs in this portion of the lawsuit), Guotai USA Company Ltd. ("Guotai USA") and Jiangsu Guotai Litian Enterprises Company ("Litian"), are entities operating in the fashion industry.[2] (*Id.* ¶¶ 1–2.) Defendant Isaac Cohen is the chief executive officer of Guotai USA. (Cohen Decl. ¶ 2.) Third Party Defendant Milo Haim is the managing member of JNCO Holdings and JNCO. (TPC ¶ 19.) Third Party Defendant Jacob Abikzer is the president of JNCO Holdings, JNCO, and J&Company Jeans, LLC ("J&Company"). (*Id.*) He is also Haim's nephew. (*Id.*) J&Company is "engaged in the clothing business" and is a dba of JNCO Holdings and JNCO. (*Id.* ¶ 3.) Third Party Plaintiffs allege that JNCO Holdings, JNCO, Haim, and J&Company are part of a "single enterprise" and "always act for, and on behalf, of each other." (*Id.* ¶ 5.) Third Party Plaintiffs further allege that JNCO Holdings, JNCO, and J&Company are not "viable businesses and have no ability to pay judgments entered against them." (*Id.*)

This case began when this enterprise failed to pay Litian for garments. (*Id.* ¶ 13). By October 2013, the enterprise had racked up $582,586 in debt to Litian. (*Id.*) The enterprise had no money to pay Litian and entered into a licensing agreement with Litian for the JNCO marks as a means of eventually making good on its debt. (*Id.* ¶ 19.) In discussions leading up to the licensing agreement, Haim and Abikzer told Isaac Cohen and Litian management that the enterprise had never sold its products to discount wholesalers or stores, that significant money and effort had been expended to promote the JNCO marks, and that the enterprise's reputation in the marketplace was "impeccable." (*Id.*)

---

[2] Guotai USA is a wholly-owned subsidiary of Litian. (Cohen Decl. ¶ 2, ECF No. 85-1.)

At some point after signing the agreement, Third Party Plaintiffs discovered that the representations Haim and Abikzer made leading up to the agreement were false. (*Id.* ¶ 22.) For instance, JNCO-marked garments had been sold at discount stores such as TJ Maxx and Haim's reputation in the fashion industry was such that buyers did not want to do business with purveyors of garments bearing the JNCO mark. (*Id.*) To date, Third Party Plaintiffs have expended millions of dollars in reliance on the agreement. (*Id.* ¶ 21.) These expenditures include, but are not limited to, the hiring of a sales force, various forms of promotion, and the lease of real property. (*Id.* ¶¶ 20, 26, Ex. 7.)

However, the parties' dealings did not end with the licensing agreement. (*Id.* ¶ 24.) In August 2014, the enterprise sought an additional $211,500 in "merchandise" from Third Party Plaintiffs. (*Id.*) To induce Third Party Plaintiffs to extend them this credit, Haim and Abikzer personally represented to Isaac Cohen that "the invoice [for the garments] would be paid" even though they knew the enterprise could not pay the invoice amount. (*Id.* ¶¶ 57, 59.) Haim also signed a guarantee to this effect on August 28, 2014. (*Id.* ¶ 57.) To date, "no money has been paid" to Third Party Plaintiffs "on this invoice."[3] (*Id.*)

Around the same time, Guotai USA agreed to "take over" the lease of a property on Rio Vista Avenue in Los Angeles ("the Rio Vista property") from the enterprise in exchange for a $4,000 per month rental subsidy. (*Id.* at 26.) J&Company made the first two $4,000 payments in July and August; however, thereafter, the enterprise tendered checks that were returned by Third Party Plaintiffs' bank for insufficient funds. (*Id.*) By the time Third Party Plaintiffs negotiated a new

---

[3] The enterprise also sought an additional $10,000 in "goods" on January 23, 2015. (TPC ¶ 64.) Again, Haim and Abikzer personally represented to Isaac Cohen that "the invoice [for the garments] would be paid" even though they knew the enterprise could not pay the invoice amount. (*Id.* ¶ 66.) J&Company provided a check for the $10,000 but the check was returned by Third Party Plaintiff's bank for insufficient funds. (*Id.*)

lease with the Rio Vista property's landlord in August 2016, the enterprise owed $80,000 in missed monthly payments. (*Id.*)

On April 5, 2016, Haim entered the Rio Vista property without Third Party Plaintiffs' permission, and removed a computer server that contained "all" of the intellectual property licensed to Third Party Plaintiffs under the agreement. (*Id.* ¶ 27.) This server also contained Third Party Plaintiffs' own intellectual property. (*Id.*) Third Party Plaintiffs have not been able to recover or duplicate the intellectual property that was on the server. (*Id.*)

After stealing the server, Haim undertook additional activities to "sabotage" the licensing agreement. (*Id.* ¶ 29.) On June 21, 2016, Third Party Plaintiffs entered into an agreement with Kickfurther, a crowd-funding site. (*Id.*) After the resulting crowd-funding campaign raised $100,000, Haim contacted employees of Kickfurther and informed them that Third Party Plaintiffs did not have a license to use the JNCO marks. (*Id.*) As a result, Kickfurther "cancelled" the campaign and did not pay out the $100,000. (*Id.*) In addition, Haim caused the JNCO website to "go off-line" several times before permanently disconnecting it in April 2016. (*Id.*)

Plaintiffs filed this lawsuit on September 15, 2016, alleging, among other things, that Defendants violated the licensing agreement and diluted the JNCO marks by creating a competing "J Crown" mark. (ECF No. 1.) Plaintiff's Complaint makes no mention of the debts, bad checks, property issues, the missing server, or disruptions of the licensing agreement. (*Id.*) On October 31, 2016, Defendants filed an answer and Guotai USA and Litian filed a counterclaim. (ECF Nos. 38–39.) That same day, Guotai USA and Litian also filed a Third Party Complaint against Haim, Abikzer, and J&Company. (ECF No. 40.) The Third Party Complaint contains nineteen causes of action including breach of contract, intentional misrepresentation, negligent misrepresentation, trespass, conversion, violation of California Civil Code section 1719(a) for passing checks without sufficient funds, and violation of California's Unfair Competition Law ("UCL"). Haim filed an answer to the Third Party

Complaint on November 29, 2016, denying liability as to all nineteen causes of action. (ECF No. 55.)

On March 13, 2017, the Clerk of Court entered default against J&Company and Abikzar at Third Party Plaintiffs' request. (ECF Nos. 78–79.) On April 14, 2017, Third Party Plaintiffs filed the pending motion for default judgment. (ECF No. 85.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment following an entry of default by the clerk against a defendant that fails to respond to a complaint. A district court has discretion as to whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### IV. DISCUSSION

Since the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552 (1872), more than one hundred years ago, courts have consistently held that where "a complaint alleges [the] defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *Nielson v. Chang*, 253 F.3d 520, 532 (9th Cir. 2001); *Societe d'Equipments Internationaux Nigeria, Ltd v. Dolarian Capital, Inc.*, No. 115CV01553DADSKO, 2016 WL 6868023, at *2 (E.D. Cal. Nov.

21, 2016) (cumulating cases to show that *Frow* remains good law in the Ninth Circuit). This is because it would be "absurd" for a court to enter inconsistent judgments against two defendants that essentially engaged in the same course of conduct. *Frow*, 82 U.S. at 554; *Vaughn v. Wells Fargo Bank, N.A.*, No. CV1205453DMGJEMX, 2012 WL 12893781, at *2 (C.D. Cal. Nov. 29, 2012) ("[C]ourts find that it would be 'incongruous and unfair' to allow a plaintiff to prevail against defaulting defendants on a legal theory later rejected with respect to an answering defendant 'in the same action.'" (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012))).

While this common law rule was originally limited to jointly-liable co-defendants, in recent years, the Ninth Circuit has extended the rule to encompass "similarly situated" parties. *Garamendi*, 683 F.3d at 1082–83. A defaulting party is similarly situated to an answering party when the case against both parties rests on the "same legal theory." *Id.*; *see also Vaughn*, 2012 WL 12893781, at *2 (finding parties to be similarly situated where causes of action were common to defaulting and answering defendants and all defendants were liable for the full amount of damages); *Mason v. City of Lake Forest Park*, No. C13-0676-JCC, 2014 WL 4093933, at *4 (W.D. Wash. Aug. 18, 2014) (denying motion for default judgment where "three of the four" claims were alleged against "all defendants," some of whom answered and some of whom did not); *Societe d'Equipments*, No. 115CV01553DADSKO, 2016 WL 6868023, at *3 (E.D. Cal. Nov. 21, 2016) (finding that parties were "similarly situated" where "the claims, facts, and legal issues asserted in the complaint relative to each of the two defendants" were similar).

This case has the potential to implicate the common law rule annunciated in *Frow* because Third Party Defendant Haim has answered the Third Party Complaint while Third Party Defendants J&Company and Abikzer have not. Application of the rule turns on whether J&Company and Abikzer are jointly liable together with Haim

for the alleged wrongdoing, or alternatively, whether they are similarly situated, such that granting default at this stage would risk inconsistent judgments.

**A. Haim and J&Company**

The Third Party Complaint specifically alleges that Haim and J&Company were part of a single enterprise with JNCO Holdings and JNCO and that Haim is an alter ego of J&Company. (TPC ¶¶ 5, 9.) This means Haim and J&Company "always act for, and on behalf, of each other" and that they will generally be held jointly liable for each other's conduct. *See Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912 DDP JEMX, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) (suggesting that the members of a single enterprise are jointly liable for the enterprise's conduct); *see also Double Bogey, L.P. v. Enea*, 794 F.3d 1047, 1051–52 (9th Cir. 2015) (indicating that a corporation and its alter ego are "jointly liable" for the corporation's conduct (citing *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985))). Even if Haim and J&Company were not jointly liable for each other's conduct, it is clear that they are similarly situated; they are the only two parties named in all nineteen of the Third Party Complaint's causes of action and the full measure of damages is sought against each of them. *Vaughn*, 2012 WL 12893781, at *2; *Mason*, 2014 WL 4093933, at *4. Accordingly, the Court will not enter a default judgment against J&Company at this time. Third Party Plaintiffs may refile a motion for default judgment against J&Company at the conclusion of the proceedings against Haim. *Garamendi*, 683 F.3d at 1083 (noting that district courts should adjudicate defaults after adjudicating the case of answering defendants).

**B. Haim and Abikzer**

Haim and Abikzer also appear to be similarly situated. Abikzer is charged with five of the nineteen causes of action in the Third Party Complaint including causes of action for intentional misrepresentation, negligent misrepresentation, and violation of the UCL. (*See* TPC ¶¶ 48–74, 108–109.) Each of these causes of action is also alleged against Haim. (*Id.*)

7

The same legal theory underlies the claims common to Haim and Abikzer—that they made certain misrepresentations to induce Third Party Plaintiffs to enter into the licensing agreement and provide them with garments. (*See id.* ¶¶ 49, 57, 64, 71.) Indeed, the Third Party Complaint makes no distinction between the actions of Haim and Abikzer. For instance, in count six relating to the misrepresentations allegedly made leading up to the licensing agreement, the Third Party Complaint notes only that "Mr. [Haim] and Mr. Abikzer made certain [r]epresentations . . . to Third Party Plaintiffs." (*Id.* ¶ 49.)

With this in mind, findings made during the ongoing proceeding against Haim about whether the misrepresentations were in fact made and the effect of those misrepresentations on Third Party Plaintiffs' decision to enter the licensing agreement will undoubtedly affect Abikzer's liability. *See Mason*, 2014 WL 4093933, at *3 ("It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering *and* defaulting defendants." (emphasis added)). Accordingly, the Court will not enter a default judgment against Abikzer at this time. Third Party Plaintiffs may refile for default judgment against Abikzer at the conclusion of the proceedings against Haim. *Garamendi*, 683 F.3d at 1083.

**C. The Court Alternatively Denies the Motion for Improper Service**

Plaintiff served the Third Party Complaint on Abikzer, and by extension, J&Company at Abikzer's other business, AGI LLC, 54 West 40th Street, New York, New York 10018. (ECF Nos. 74–75; Cohen Decl., Ex. 6.) However, the motion for default judgment's proof of service indicates that it was served at 540 West 40th Street, New York, New York 10018. (ECF No. 85.) In short, the motion appears to have been served at the wrong address. Without proper service of the motion for default judgment, Third Party Defendants J&Company and Abikzer have not had a chance to respond and the Court's entry of default judgment would be meaningless. *See* Fed. R. Civ. P. 5(d) (requiring proper service of motions); *see also* C.D. Cal. L.R.

55-2 (requiring notice to defaulting party where movant is seeking unliquidated damages).

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Third Party Plaintiffs' motion for default judgment without prejudice. (ECF No. 85.) Third Party Plaintiffs may refile their motion at the conclusion of the proceedings against Haim.

**IT IS SO ORDERED.**

May 3, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**